[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11103

_____

MARCUS RAPER,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:20-cv-00597-PRL

_____

Before LUCK, LAGOA, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Marcus Raper appeals the Magistrate Judge's order affirming the Social Security Administration's (SSA) 2020 denial of his claim for disability insurance benefits.[1] First, Raper argues that the Supreme Court's holding in *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044, 2055 (2018), requires that his case be remanded to a different administrative law judge (ALJ). He contends that although the ALJ had been constitutionally appointed by the time he reheard his case in 2020, the ALJ was not constitutionally appointed under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, when he first decided his case in 2017.[2] Second, Raper argues that the ALJ erred by not clearly articulating good cause for discounting his treating physician's opinion because the ALJ's rationale that the opinion was inconsistent with the record was conclusory. Third, Raper argues that the ALJ erred by partially discrediting his subjective complaints of pain because the ALJ did not reference what evidence conflicted with his testimony and only discussed objective medical evidence.

---

[1] The parties consented to have the Magistrate Judge issue final judgment. *See* 28 U.S.C. § 636(c) ("Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ."); Fed. R. Civ. P. 73(a) ("When authorized under 28 U.S.C. § 636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding . . . .").

[2] As explained below, the ALJ issued a partially favorable decision in 2017 and found that Raper became disabled on August 8, 2017, but was not disabled before that date.

After careful review, and with the benefit of oral argument, we affirm. Under these facts, there was no commensurate Appointments Clause violation in the ALJ's 2020 decision. The ALJ also articulated good cause for discounting the treating physician's opinion because—when the ALJ's decision is read as a whole—it is clear why the ALJ found the opinion inconsistent with the record. And the ALJ did not err in partially discrediting Raper's subjective complaints because he applied the correct legal standard and did not rely solely on objective medical evidence.

## I. Background

In March 2015, Raper applied for Social Security disability insurance benefits. He alleged that he became disabled and stopped working on December 31, 2013, because of high blood pressure, high cholesterol, sleep apnea, back pain with muscle spasms, and eye degeneration. Raper's claim was denied initially and upon reconsideration. Raper requested a hearing, which was held on August 8, 2017, before ALJ Kevin J. Detherage.

### A. First ALJ Decision

In October 2017, the ALJ issued a partially favorable decision. He found that Raper became disabled on August 8, 2017, but was not disabled before that date. Raper requested review, but the Appeals Council denied his request. The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner.

Raper appealed to the District Court. Later, the Commissioner moved to reverse and remand under sentence four of 42 U.S.C. § 405(g) to instruct the ALJ "to obtain supplemental

vocational expert testimony to clarify the effect of the assessed limitations on [Raper's] occupational base for the period prior to August 8, 2017." With no objection from Raper, the District Court granted the Commissioner's motion.

On remand, the Appeals Council affirmed the favorable portion of the ALJ's decision finding that Raper was disabled beginning on August 8, 2017. The Appeals Council also vacated the ALJ's findings related to the time before that date and remanded to the ALJ to obtain supplemental evidence from a vocational expert (VE).

### B. Second ALJ Decision

On September 16, 2020, Raper had a second hearing before the same ALJ. There, Raper testified in detail about his pain, its effect on his life, and his treatment from his neurosurgeon, Dr. Nizam Razack.[3] And, as directed by the Appeals Council, a VE testified.

A month later, the ALJ issued his second decision. The ALJ determined that Raper was not disabled between December 31, 2013, and August 7, 2017, and denied Raper's claim for disability benefits. To support his decision, the ALJ conducted the five-step

---

[3] Among other things, Raper testified that he stopped umpiring in October 2013 because he "couldn't even stand." He also testified that he used a cane between his first and second surgeries, could walk fifteen to twenty minutes maximum, used a wheelchair between his second and third surgeries, could lift only fifteen pounds, could balance for only a few minutes, and could sit for only twenty to twenty-five minutes.

sequential evaluation process under 20 C.F.R. § 404.1520(a)(4) and made these findings.

First, Raper had not been engaged in substantial gainful activity between December 31, 2013, and August 7, 2017. Second, Raper had the following severe impairments that limited his ability to perform basic work activities: lumbar and cervical degenerative disc disease, diabetes, obesity, foot drop, and depression. Third, Raper did not have an impairment or combination of impairments that met or medically equaled the severity of the ones listed in 20 C.F.R. § 404, Subpart P, App. 1. Fourth, Raper had the residual functional capacity (RFC) to perform simple and routine sedentary work, subject to certain physical limitations. The ALJ found that Raper's complaints about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical records. Last, the ALJ determined that Raper was unable to perform any past relevant work. However, based on the VE's testimony, the ALJ found that there were jobs in the national economy in which Raper could work, such as an "Order clerk," "Addresser," or "Document preparer."[4]

The ALJ also discussed two medical opinions. The first was from Dr. Girija Padmanabh, a state agency medical consultant.

---

[4] *See* U.S. Dept. of Labor, Dictionary of Occupational Titles, § 209.567-014, Order Clerk, Food and Beverage, 1991 WL 671794 (4th ed. 1991); *id.* § 209.587-010, Addresser, 1991 WL 671797; *id.* § 249.587-018, Document Preparer, Microfilming.

The second, dated November 4, 2015, was from an "unknown source," yet the ALJ assumed it was from a treating physician.[5]

Dr. Padmanabh reported that Raper could "lift and/or carry" twenty pounds occasionally and ten pounds frequently. She also stated that Raper could stand, "sit[,] and/or walk" six hours in an eight-hour workday and that Raper had no manipulative, visual, or communicative limitations. Dr. Padmanabh noted that Raper has some postural limitations that limited his mobility. She concluded that Raper was not disabled. The ALJ gave "some weight" to Dr. Padmanabh's opinion because of her expertise and review of Raper's file, but he found that "the record support[ed] greater exertional, postural[,] and manipulative limitations." However, because of Raper's reported progress from his latest back surgery, the ALJ concluded that "limitations more stringent than sedentary level [were] not warranted."

The November 4, 2015, medical opinion reported that Raper could: lift twenty pounds frequently; carry up to twenty pounds occasionally; and sit, stand, and walk for two hours during an eight-hour workday. It also noted that Raper could not operate foot controls bilaterally and that Raper had several postural limitations, which prevented Raper from climbing, stooping, kneeling, crouching, and crawling. The ALJ gave this opinion "some weight" but found that the "extreme limitations noted [were] not given

_____

[5] Raper alleges that Dr. Razack wrote the November 4, 2015, medical opinion. The signature on the opinion is illegible, but Raper testified Dr. Razack wrote it.

weight due to their inconsistency with the records." The ALJ added that the functional limitations that Raper alleged in his testimony were "disproportionate to the clinical findings."

### C. Magistrate Judge's Order

Rather than seek review from the Appeals Council, Raper filed another complaint in the District Court, seeking reversal or remand. The Commissioner answered and denied Raper's assertions.

In his brief before the Magistrate Judge, Raper made three arguments. First, he argued that the ALJ failed to apply the correct legal standard to the November 4, 2015, medical opinion about his limitations. He asserted that the ALJ's decision to not accord the opinion substantial weight because it was inconsistent with the record was conclusory. Additionally, he explained that the ALJ incorrectly attributed the opinion to "an unknown source" despite Raper's testimony that it was Dr. Razack's opinion.

Second, Raper claimed that the ALJ applied the incorrect legal standard when evaluating his allegations of pain and limitations. He argued that the ALJ discounted his testimony about his limitations based solely on the objective medical evidence and overlooked any other factor.

Third, Raper argued that the SSA should have reassigned his case to a properly appointed ALJ under the Appointments Clause. He noted that, since *Lucia*, the SSA conceded that its ALJs were subject to the Appointments Clause and ratified the appointment of its current ALJs on July 16, 2018. He also explained that his

original hearing was held in April 2018 before ALJ Detherage, who had not been constitutionally appointed. Thus, when the District Court remanded, it should have instructed the Commissioner to remand to a different ALJ who had been constitutionally appointed. He also argued that, under *Carr v. Saul*, 593 U.S. 83, 95 (2021), he was not required to exhaust this issue before the ALJ at the 2020 hearing because ALJs are ill-suited to address constitutional challenges and he would have been powerless to grant the requested relief. Because of these alleged errors, Raper asserted that reversal for an award of benefits was the appropriate remedy.

The Magistrate Judge affirmed the Commissioner's decision. First, the Magistrate Judge found that the ALJ properly considered the November 4, 2015, medical opinion. The Magistrate Judge acknowledged that the ALJ stated the opinion was from "an unknown source," but the ALJ also "expressly assumed it was from a treating source." The Magistrate Judge thus treated the opinion as Dr. Razack's. The Magistrate Judge also noted that the opinion was a checklist opinion, and that checklist opinions are generally disfavored.

Next, the Magistrate Judge rejected Raper's contention that the ALJ's decision to discount Dr. Razack's opinion was conclusory. The Magistrate Judge explained that the ALJ discussed the objective medical evidence in detail throughout his decision and provided several examples of why Dr. Razack's assessment was inconsistent. Further, the Magistrate Judge stated that the ALJ discussed Dr. Razack's opinion immediately after he discussed the state

agency's RFC determination, so the ALJ properly considered the record as a whole. It was therefore unnecessary for the ALJ to reiterate those records when discounting Dr. Razack's opinion.

Second, the Magistrate Judge found that the ALJ properly considered Raper's subjective complaints of pain because he stated that his statements about the intensity, persistence, and limiting effects of the symptoms conflicted with the medical evidence and other evidence. The Magistrate Judge noted that the ALJ explicitly explained that he considered Raper's subjective complaints relative to the record, including Raper's back surgery records and the state's medical consultant's opinion. The Magistrate Judge found that substantial evidence supported the ALJ's evaluation of Raper's condition and the credibility determination.

Third, the Magistrate Judge rejected Raper's argument that the SSA's failure to remand his case to a different ALJ was an Appointments Clause violation. The Magistrate Judge agreed with the Commissioner that the only ALJ decision under review was the October 2020 decision and noted that a number of district courts have rejected similar arguments. Raper timely appealed.

## II. Legal Standards

"A few different standards of review govern this appeal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). First, "[w]e review questions of constitutional law *de novo*." *Benning v. Comm'r, Ga. Dep't of Corrs.*, 71 F.4th 1324, 1328 (11th Cir. 2023). Second, "[w]hen an ALJ denies benefits and the Appeals Council denies review, 'we review the ALJ's decision as the

Commissioner's final decision.'" *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)). "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). "However, we review the [Commissioner's] decision only to determine whether it is supported by substantial evidence." *Id.* "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion. This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.* (citation omitted). "Third, we also review *de novo* the judgment of the district court." *Ingram*, 496 F.3d at 1260.

## III. Discussion

On appeal, Raper generally repeats the arguments he made before the Magistrate Judge. We first discuss Raper's Appointments Clause challenge. Next, we address whether the ALJ applied the correct legal standard to the November 4, 2015, medical opinion. Last, we analyze whether the ALJ applied the correct legal standard to Raper's testimony about his pain and limitations.

### A. Appointments Clause

Raper first raises an Appointments Clause challenge. He argues that irrespective of the ALJ's appointment status in 2020, the ALJ's participation in the case continued—rather than cured—the Appointments Clause violation. Under *Lucia*, he contends that the

SSA should have reassigned his 2020 case to a different ALJ. We disagree.

"The Appointments Clause prescribes the exclusive means of appointing 'Officers.'" *Lucia*, 138 S. Ct. at 2051. Although principal officers must be nominated by the President and confirmed by the Senate, "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

Not long ago, the Supreme Court held that ALJs of the Securities and Exchange Commission (SEC) were "'Officers of the United States' [rather than] simply employees of the Federal Government" for purposes of the Appointments Clause. *See Lucia*, 138 S. Ct. at 2049, 2051. In *Lucia*, the SEC instituted an administrative proceeding against Raymond Lucia for violating the Investment Adviser's Act and assigned the case to an ALJ. *See id.* at 2049–50. Because the ALJ had been appointed by SEC staff members and not the Commission, Lucia argued that the ALJ was not constitutionally appointed. *Id.* at 2050.

Relevant here, *Lucia* discussed the appropriate remedy for such an Appointments Clause violation. *See id.* at 2055. The Supreme Court explained that "the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 183, 188 (1995)). It added that the "official cannot be [the original ALJ], even if he has by now received (or receives

sometime in the future) a constitutional appointment." *Id.* The Supreme Court reasoned that because the original ALJ had "already both heard Lucia's case and issued an initial decision on the merits[, h]e [could not] be expected to consider the matter as though he had not adjudicated [the case] before." *Id.* Thus, "[t]o cure the constitutional error, another ALJ (or the Commission itself)" was required to "hold the new hearing to which Lucia [was] entitled." *Id.*

Responding to Justice Breyer's concurrence—that it would be permissible for the same ALJ to hear Lucia's case on remand—the majority highlighted two remedial aims of Appointment Clause violations. The majority explained that Appointments Clause remedies (1) advance the structural purposes of the clause and (2) incentivize litigants to raise Appointments Clause challenges. *Id.* at 2055 n.5. The majority reasoned these aims were best accomplished by providing a successful litigant with a hearing before a new ALJ because "the old [ALJ] would have no reason to think he did anything wrong on the merits—and so could be expected to reach all the same judgments." *Id.* (citation omitted).[6]

---

[6] The majority also noted that a new ALJ is not required "for every Appointments Clause violation." *Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018). It recognized that remand to a new ALJ was possible "because other ALJs (and the Commission) [were] available to hear this case." *Id.* The majority also understood that where the "Appointments Clause problem is with the Commission itself, so that there is no substitute decisionmaker, the rule of necessity would presumably kick in and allow the Commission to do the rehearing." *Id.*

In response to *Lucia*, the SSA Acting Commissioner at the time recognized that SSA ALJs were also "Officers" under the Appointments Clause, and she ratified their appointments on July 16, 2018. SSR 19-1p, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019). On March 15, 2019, the SSA announced that, in response to timely raised Appointments Clause challenges, the Appeals Council would vacate pre-ratification ALJ decisions and "either remand the case to an ALJ other than the ALJ who issued the decision under review, or issue its own new decision about the claim covering the period before the date of the ALJ's decision." *Id.* But this remedy was only available for claimants that timely raised Appointments Clause challenges to the Appeals Council. *Id.*

Most recently, the Supreme Court issued its opinion in *Carr*, 593 U.S. 83. There the Supreme Court held that the Eighth and Tenth Circuits "erred in imposing an issue-exhaustion requirement on [the] petitioners' Appointments Clause claims." *Id.* at 96. The Supreme Court further concluded that "[w]here . . . claimants are not required to exhaust certain issues in administrative proceedings to preserve them for judicial review, claimants who raise those issues for the first time in federal court are not untimely in doing so." *Id.* at 95.

At first blush, it may appear that *Lucia* and *Carr* settle the issue here. But *Lucia* and *Carr* dealt with situations different from Raper's. In *Lucia*, the issue was how to remedy an uncorrected Appointment Clause violation. There was no question about whether there was a live Appointments Clause violation—an

unconstitutionally appointed ALJ had issued the decision before the Court. *See* 138 S. Ct. at 2051. *Carr* also dealt with an unremedied Appointments Clause violation. The issue there dealt with how to properly raise the issue and whether the claimant first needed to present it to the ALJ. *See* 593 U.S. at 86–87. But there was no question that an unconstitutionally appointed ALJ had issued the opinion before the Court.

Raper's situation differs. An unconstitutionally appointed ALJ issued the first decision, but that decision was vacated and remanded on the merits. When he issued his second decision—the decision before this Court—the ALJ had been constitutionally appointed. Raper did not challenge the first decision based on the Appointments Clause violation. So the issue here is not how to remedy or timely raise an Appointments Clause violation; the issue is whether there *is* an Appointments Clause violation at all.

Whether there is an Appointments Clause violation in situations like Raper's is a matter of first impression in our Circuit. Raper would have us follow the lead of the Ninth and Fourth Circuits, both of which applied *Lucia* in similar factual scenarios and held that Appointments Clause violations existed. *See Cody v. Kijakazi*, 48 F.4th 956 (9th Cir. 2022); *Brooks v. Kijakazi*, 60 F.4th 735 (4th Cir. 2023). We decline to do so.

In *Cody*, an unconstitutionally appointed SSA ALJ reviewed and denied Cody's claim. 48 F.4th at 958. Cody appealed to the

district court[7] without challenging the ALJ's appointment. *Id.* The district court vacated the ALJ's decision and remanded for a new hearing "because the ALJ failed to properly consider certain evidence." *Id.* The case returned to the same ALJ, who was now constitutionally appointed. *Id.* "[T]he ALJ reached the same conclusion—no benefits." *Id.* Cody appealed again, this time raising an Appointments Clause violation. *Id.* at 958–59. The district court affirmed the ALJ and denied Cody's Appointments Clause claim because the ALJ's first decision had been vacated and the ALJ was properly appointed when she issued her second decision. *Id.* at 959–60.

On appeal, the Ninth Circuit held that Cody was due a new hearing before a different ALJ. *Id.* at 961. In its view, "Cody did not receive what *Lucia* requires: an adjudication untainted by an Appointments Clause violation." *Id.* at 962. The Ninth Circuit reasoned that remanding the case to a new ALJ served the two remedial aims of *Lucia.* *Id.* Even though the ALJ was constitutionally appointed when she issued the second decision, it was "obvious that the [first] decision tainted the [second] decision." *Id.* The ALJ "copied verbatim parts of the [first] decision into her [second] decision," making it clear that she "didn't take a fresh look at the case" the second time around. *Id.* at 962–63.

In *Brooks*, the Fourth Circuit reached the same conclusion based on similar facts. *See* 60 F.4th at 743–44. Brooks applied for

---

[7] Cody's appeal occurred shortly after *Lucia*. *See Cody v. Kijakazi*, 48 F.4th 956, 959 (9th Cir. 2022).

Social Security benefits but was denied by an unconstitutionally appointed ALJ. *Id.* at 736. Brooks sought review from the Appeals Council. *Id.* Following *Lucia*, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. *Id.* at 737. Brooks had not raised, and the Appeals Council did not address, the Appointments clause issue; instead, the Appeals Council identified flaws in the ALJ's decision. *Id.* On remand, the same ALJ—who was now constitutionally appointed—again denied Brooks's claim. *Id.* After the Appeals Council denied review, Brooks appealed to a federal district court. There, Brooks raised substantive issues with the ALJ's second decision and an Appointments Clause challenge. *Id.* at 738. The district court affirmed the Commissioner's denial of Brooks's disability benefits claim because it found that: (1) the ALJ was properly appointed before the second decision; (2) the Appeals Council's vacatur of the ALJ's first decision on the merits eliminated *Lucia*'s remedy requirement; and (3) *Lucia* did not hold that a new officer is required for every Appointments Clause violation. *Id.* at 738–39.

The Fourth Circuit reversed. *Id.* at 741–42, 744. It explained that *Cody* was "practically on all-fours" and declined to reach a different conclusion. *Id.* at 742. In the Fourth Circuit's view, because Brooks never received the remedy *Lucia* required, the constitutional error committed in the ALJ's first decision "was a continuing violation that infected" the ALJ's second decision on the same claim. *Id.* The Fourth Circuit added that the entire administrative adjudication included the first flawed ALJ decision. *Id.* Thus, under *Lucia*, the ALJ could not properly rule on Brooks's claim. *Id.*

Notably, the Fourth Circuit also rejected the Commissioner's argument that *Lucia*'s remedy was inapplicable when a constitutionally infirm ALJ decision is vacated on the merits. *Id.* at 743. According to the Fourth Circuit, *Lucia* "did not carve out any exception to the remedy's necessity" in that situation. *Id.* And because the ALJ had heard and decided the merits of Brooks's claim, there was a strong possibility the ALJ "would resolve the issue identified by the Appeals Council and, in the end, simply make the same ruling." *Id.* Which, as the Fourth Circuit noted, happened in the case. *See id.*

We respectfully disagree with the Fourth and Ninth Circuits. The District Court's merits-based vacatur of the ALJ's 2017 Decision eliminated the taint of the unconstitutional appointment. There is no live Appointments Clause violation, so there is no need for a *Lucia* remedy. This is so for three reasons.

First, when a decision is vacated, it becomes void and has no legal effect. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (per curiam).[8] The ALJ essentially started fresh when the District Court vacated the 2017 decision and remanded. The decision before us now is the 2020 decision—not the 2017 decision. When the ALJ began anew, the entire second administrative

---

[8] *See also* Social Security Admin., Program Operations Manual System (POMS), GN 03106.036 Court Remand Orders, https://perma.cc/3HTB-RLKJ ("[A] court order vacating the prior decision and remanding the case to the Commissioner voids the prior decision . . . and thus returns the case to status of a claim 'pending' before SSA.").

adjudication was conducted by a constitutionally appointed ALJ, which brings this case outside the bounds of *Lucia*.

Second, the remedy in *Lucia* served the purpose of encouraging claimants to raise Appointments Clause challenges and was motivated by a concern that the old ALJ would have no reason to think he did anything wrong on the merits. *Lucia*, 138 S. Ct. at 2055 n.5. Neither that purpose nor that concern are relevant here.

When the District Court vacated the 2017 decision and remanded the case, it was returned to an ALJ who was constitutionally appointed. There was no longer a constitutional violation to remedy, so there was no need to incentivize raising one. Nor was there any danger that the ALJ would lack notice of the deficiency in his earlier decision—the District Court and the Appeals Council explicitly told him what was wrong with the 2017 decision. Unlike the ALJ in *Cody*, the ALJ here did not just adopt his earlier decision verbatim. Nothing in the record suggests that he failed to take a fresh look at Raper's claim.

Third, our entire judicial system works on the premise that a judge can set aside his or her earlier decision and look at a case anew. *See Liteky v. United States*, 510 U.S. 540, 551 (1994) ("It has long been regarded as normal and proper for a judge to sit in the same case upon its remand . . . ."). For example, the Supreme Court tells this Court what we got wrong, and the same panel reconsiders the case. This Court vacates and remands matters to district courts as a matter of course—each time providing them with

instructions on how they erred and how to proceed going forward.[9]
We see no reason to disrupt that system here because we do not
think this situation presents the same structural concerns as *Lucia*.

We therefore hold that there is no Appointments Clause vi-
olation when an earlier decision made by an unconstitutionally ap-
pointed ALJ is vacated on the merits and remanded to the same
ALJ, who is now constitutionally appointed.

### B. Physician's Opinion

Raper next argues that the ALJ erred because he failed to ap-
ply the correct legal standards to the November 4, 2015, medical
opinion and made findings not supported by substantial evidence.
As an initial point, Raper asserts that the ALJ's failure to
acknowledge that this was Dr. Razack's opinion prevents us from
conducting meaningful review. He contends that the ALJ's finding
that the opinion was inconsistent with the record is conclusory and
fails to provide good cause for rejecting it. Finally, Raper asserts
that the Magistrate Judge erred by finding that the ALJ's prior dis-
cussion of the evidence clearly articulated the ALJ's reason for dis-
counting the opinion.

In response, the Commissioner argues that it is ambiguous
whether the November 4, 2015, medical opinion was written by

---

[9] Only in rare circumstances do we remand to a different district court judge.
For example, when the district court judge would have difficulty putting aside
his or her previous views and findings. *See, e.g.*, *Clark v. Coats & Clark, Inc.*,
990 F.2d 1217, 1230 (11th Cir. 1993); *United States v. Torkington*, 874 F.2d 1441,
1446–47 (11th Cir. 1989) (per curiam).

Dr. Razack. Regardless, the Commissioner notes that the ALJ assumed it was from a treating source. Next, the Commissioner contends that the ALJ had good cause for discounting the opinion; the ALJ found that it was inconsistent with the record. The Commissioner argues that the ALJ clearly articulated sufficient factual support for that reason based on his preceding discussion of the record, which the ALJ found supported a sedentary RFC. According to the Commissioner, nothing requires the ALJ to repeat his entire factual analysis of the evidence to be legally sufficient. We agree with the Commissioner.

As explained above, our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "An individual claiming Social Security disability benefits must prove that []he is disabled." *Moore*, 405 F.3d at 1211. To determine whether a claimant is disabled, the Social Security regulations mandate a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4); *Winschel*, 631 F.3d at 1178.

Relevant here is step four. There, the ALJ formulates the claimant's RFC by considering a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The RFC is the most a claimant can still do despite his or her restrictions. *Id*. § 404.1545(a)(1). To determine what a claimant can still do, the ALJ examines all "relevant medical and other evidence." *Id*. § 404.1545(a)(3). Evidence

includes (1) statements from medical sources and (2) descriptions and observations from the claimant and the claimant's "family, neighbors, friends, or other persons." *Id.* Based on that evidence, the ALJ determines what classification of jobs the claimant can perform. *See id.* § 404.1567. Pertinent here is the sedentary classification. A sedentary job classification is the lowest physical exertion requirement that an ALJ can assess in making a disability determination. *See id.* § 404.1567(a).[10]

For claims filed before March 27, 2017, an ALJ must "give more weight to [the] medical opinions" of a claimant's treating physicians unless good cause is shown to the contrary. *Id.* § 404.1527(c)(2); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259. "[T]he ALJ must clearly articulate the reasons for giving less weight

---

[10] 20 C.F.R. § 404.1567(a) explains that

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

to the opinion of a treating physician.  The failure to do so is re-
versible error." *Id.* (citations omitted).

Raper's initial point—that the ALJ's failure to acknowledge
that Dr. Razack wrote the November 4, 2015, medical opinion pre-
vents us from conducting meaningful review—was raised for the
first time in his reply brief.  We have repeatedly held that "[i]ssues
not raised in an initial brief are deemed forfeited and will not be
addressed absent extraordinary circumstances." *Anthony v. Georgia*,
69 F.4th 796, 807 (11th Cir. 2023); *see also Sapuppo v. Allstate Florid-
ian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (collecting cases stat-
ing the same).  Extraordinary circumstances include situations in
which:

> (1) the issue involves a pure question of law and re-
> fusal to consider it would result in a miscarriage of
> justice; (2) the party lacked an opportunity to raise
> the issue at the district court level; (3) the interest of
> substantial justice is at stake; (4) the proper resolution
> is beyond any doubt; or (5) the issue presents signifi-
> cant questions of general impact or of great public
> concern.

*United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en
banc), *cert. denied*, 143 S. Ct. 95 (2022).  None of these circumstances
are present here.  We therefore decline to address this argument.[11]

---

[11] At best, the ALJ's failure to attribute the November 4, 2015, medical opinion
to Dr. Razack was harmless error.  Remand is unwarranted unless an error
creates fundamental unfairness or prejudice.  *See Diorio v. Heckler*, 721 F.2d 726,
728 (11th Cir. 1983) (describing the ALJ's errors as "harmless" because they

As for Raper's other arguments, the parties argue past each other. Though Raper uses the phrase "substantial evidence,"[12] his argument is that the ALJ legally erred by failing to clearly articulate why he assigned no weight to the November 4, 2015, medical opinion's RFC finding. The Commissioner addresses Raper's argument but frames her analysis by arguing that the ALJ's RFC finding was supported by substantial evidence as shown by the ALJ's previous discussion of the record. Raper's argument relies on the legal standard on which the ALJ's decision was based, not its factual underpinnings.[13] Thus, de novo—not substantial evidence—review

---

were "irrelevant" to the ALJ's analysis of the relevant factors). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317–18 (11th Cir. 2021) (alteration in original) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Given that the ALJ assumed the opinion was from a treating physician—and therefore subject to the old treating physician rule—Raper has not met his burden here.

[12] Raper has forfeited any attempt at a substantial evidence argument. Only in his reply does he clarify his argument that substantial evidence does not support the ALJ's finding that the November 4, 2015, medical opinion was from an "unknown source." *See* Fed. R. App. P. 28(a)(8)(A) (noting that an argument must contain the "appellant's contentions and the reasons for them, with *citations* to the authorities and the *parts of the record* on which the appellant relies" (emphasis added)); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) ("An appellant forfeits an issue when [he] 'raises it in a perfunctory manner without supporting arguments and authority.'" (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014))). As noted above, Raper does not dispute that the signature on the form *is* illegible.

[13] Raper also argues that it would be improper to affirm based on the Magistrate Judge's acknowledgment that the November 4, 2015, medical opinion

applies. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1103 (11th Cir. 2021).

The ALJ's stated reason for discounting the November 4, 2015, medical opinion—that it was inconsistent with the medical records—was adequate and amounts to good cause. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1306 (11th Cir. 2018) (per curiam) ("The ALJ's stated reason for discounting Dr. Odjegba's opinion—that it was inconsistent with his own medical records and the record as a whole—was adequate and amounts to good cause."). The ALJ's finding that the extreme limitations in the November 4, 2015, medical opinion were inconsistent with the record must be viewed in context. This finding was reached following the ALJ's detailed discussion of the evidentiary record of Raper's impairments, including various physical examination records.

Among other examination records, the ALJ discussed treatment notes from Dr. Razack, Dr. Vivian Woodward (another treating physician), and Dr. Padmanabh as follows. At a March 2015 examination, Dr. Razack reported that Raper "raised from a seated position without difficulty, and ambulated with the assistance of a cane." A month later, Dr. Razack noted that Raper was in good strength in his lower extremities, ambulated without assistive devices, and was advised to increase his activity levels. And, in October 2015, Dr. Razack reported that Raper's exam was stable

---

was a "checklist opinion" and such opinions are generally disfavored. We need not address this argument because we conclude below that the ALJ did not err in discounting this opinion.

but that Raper complained of low back pain if he sat or stood for prolonged periods.

Like Dr. Razack, Dr. Woodward noted in her March 2015 records that Raper had a "normal gate," his "balance was easy," and his "posture was within normal limits."

Last—and right before discounting the November 4, 2015, medical opinion—the ALJ discussed Dr. Padmanabh's RFC assessment. As explained above, Dr. Padmanabh concluded that Raper could stand, sit, and walk six hours in an eight-hour workday, as well as lift and carry twenty pounds occasionally and ten pounds frequently. Dr. Padmanabh also concluded that Raper had no manipulative limitations but had some postural limitations—though the ALJ found that the record supported greater limitations.

Contrary to Raper's argument, it is not as if the ALJ provided "no explanation" and there is "no obvious reason for the inconsistency in sight." *See Schink*, 935 F.3d at 1261. We agree with our sister circuits that "it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in this circumstance. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding that the ALJ's decision read as a whole, contained sufficient explanation for his finding at step three because the ALJ was not required "to use particular language or adhere to a particular format in conducting his analysis").

This rationale comports with *Winschel*'s requirement for ALJs to state with particularity the weight given to a treating

physician's opinion or to clearly articulate grounds for rejecting a treating physician's opinion. *See* 631 F.3d at 1179. In *Winschel*, this Court was concerned that, in the absence of such a statement, it would be impossible to assess whether the ALJ's decision was rational and supported by substantial evidence. *See id.* We do not face that impossibility here. The ALJ explained the weight he afforded the November 4, 2015, medical opinion and that he did not give the extreme limitations weight due to their inconsistency with the records. Though the ALJ did not repeat his discussion of those records in the same paragraph, he thoroughly discussed those records in the immediately preceding paragraphs where he determined that the records supported a sedentary RFC. Short of re-summarizing or adding an internal citation to those paragraphs, it is hard to imagine how the ALJ could have been clearer.[14]

---

[14] The exact level of clarity required in an ALJ's statement in similar circumstances has been discussed extensively—at least in our unpublished decisions. *See Delgado v. Comm'r of Soc. Sec.*, No. 20-14234, 2021 WL 4099237, at *7 (11th Cir. Sept. 9, 2021) (Branch, J., dissenting) (concluding that the ALJ clearly articulated a specific justification for giving less weight to a treating physician's opinion under similar circumstances); *Kaplowitz v. Acting Comm'r of Soc. Sec.*, 806 F. App'x 711, 717 (11th Cir. 2020) (per curiam) (holding that the ALJ's failure to explicitly state the weight given to a treating physician's opinion was harmless error because it was clear that the ALJ considered the opinion and rejected it based on contrary evidence); *Stewart v. Comm'r of Soc. Sec. Admin.*, 746 F. App'x 851, 855–56 (11th Cir. 2018) (per curiam) (holding that the ALJ failed to clearly articulate reasons for discounting a treating physician's opinion, in part, because the ALJ failed to specify how the physician's opinion was undercut); *cf. Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *6 (11th Cir. May 11, 2022) (per curiam) (holding that the ALJ satisfied the requirement to state with particularity the weight afforded to

## C. *Raper's Subjective Complaints*

Raper's final argument is that the ALJ applied the incorrect legal standard to his own testimony about his pain and limitations. He asserts that the ALJ failed to apply the 20 C.F.R. § 404.1529(c)(3) factors when evaluating his subjective complaints and only relied on objective medical evidence.[15]

The Commissioner contends that Raper's legal error argument fails for two reasons. First, the Commissioner asserts that the ALJ did not discount Raper's testimony because it was unsubstantiated by the objective medical evidence; the ALJ did so because

---

a treating physician's opinion despite not using specific terms). We emphasize that there are no magic words to state with particularity the weight given to medical opinions or the reasons for discounting them. What matters is whether the ALJ "state[s] with at least some measure of clarity the grounds for his [or her] decision." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

[15] Raper also, again, makes a passing argument that the ALJ "made findings not supported by substantial evidence." The Commissioner argues that substantial evidence supports the ALJ's finding that Raper's subjective complaints about his pain and limitations were not fully consistent with the record. The Commissioner notes that Raper does not refute this finding and has thus forfeited that issue.

"Merely making passing references to a claim . . . is insufficient. Instead, the party must clearly and unambiguously demarcate the specific claim and devote a discrete section of his argument to it so the court may properly consider it." *Brown v. United States*, 720 F.3d 1316, 1332 (11th Cir. 2013) (citation omitted); *see also Harner*, 38 F.4th at 898–98; Fed. R. App. P. 28(a)(8)(A). Raper has therefore forfeited this argument and we do not consider it.

Raper's testimony was inconsistent with the objective medical evidence. Second, the Commissioner contends that the ALJ did not rely solely on objective medical evidence because he discussed Raper's testimony, his treatments, and their effectiveness, his reports to his treating physicians, and medical source opinions. We again agree with the Commissioner.

To establish a disability based on testimony of pain and other symptoms, a claimant must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "[I]n certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam).

When evaluating a claimant's statements as to the intensity of his symptoms, the ALJ considers: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) the claimant's treatments other than medication; (6) any measures used to relieve pain; and (7) other factors

concerning a claimant's functional limitations and restrictions based on pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i)–(vii). The ALJ must consider these factors in relation to other evidence in the record and whether the claimant's statements conflict with other evidence. *Id.* § 416.929(c)(4).

We will not disturb a clearly articulated credibility finding if supported by substantial evidence. *Foote*, 67 F.3d at 1562. The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); *see also Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987) ("In these cases 'our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.'" (quoting *Parker v. Bowen*, 788 F.2d 1512, 1521 (11th Cir. 1986) (en banc))).

Where "proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor to the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication [from the ALJ's opinion] must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (per curiam)). "A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case." *Id.* But remand is unwarranted unless an error shows "unfairness" or "clear prejudice." *See Edwards v.*

*Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (affirming Commissioner's decision denying disability benefits where the claimant was not adequately informed of her right to counsel because the Commissioner's decision was supported by substantial evidence appearing in the record as a whole and the claimant did not show that she was prejudiced by the error).

For example, in *Foote*, we remanded because the ALJ failed to make an adequate explicit or implicit credibility finding in discrediting the claimant's testimony on the extent of her pain. 67 F.3d at 1562–63. We explained that a credibility finding was crucial to assessing the claimant's subjective complaints to determine her overall RFC. *Id.* at 1562. But the ALJ identified no inconsistencies between the claimant's statements to her physicians and those made on her disability benefits application or at her administrative hearing, and no VE was called to determine her realistic ability to find work. *Id.*

In discounting Raper's testimony, the ALJ neither failed to apply the 20 C.F.R. § 404.1529(c)(3) factors nor relied solely on objective medical evidence. To be clear, the ALJ discredited Raper's testimony because he observed that Raper's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms; however, [Raper's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not

entirely consistent with the medical evidence and other evidence in the record."[16]

The ALJ's decision shows that he considered, in addition to the objective medical evidence, Raper's responses in agency questionnaires and the specifics of Raper's testimony at the hearing. The ALJ explained that in his agency questionnaire responses, Raper "alleged debilitating physical and mental symptoms," including "difficulty with lifting, squatting, bending, standing, walking[,] and stair climbing." Regarding Raper's ability to perform household chores, the ALJ noted that Raper "did not endorse any activities inconsistent with sedentary level exertion." The ALJ also recognized that Raper testified that he: (1) stopped umpiring because he could not move around, (2) could only walk for thirty minutes before his legs hurt, (3) used a cane after his second back surgery, (4) could lift fifteen pounds, and (5) could not balance after a few minutes. This is precisely the type of "other evidence" ALJs must consider under 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

---

[16] As we have noted in an unpublished opinion, rejecting a claimant's statements only because they are not corroborated by the medical evidence "is a very different circumstance from when the claimant's statements are *inconsistent* with the medical or other evidence of record." *Yanes v. Comm'r, Soc. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *7 n.14 (11th Cir. July 15, 2021) (per curiam). ALJs must evaluate a claimant's statements "in relation to" the available evidence and "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4).

After detailing the medical evidence, the ALJ reiterated that:

the functional restrictions alleged by [Raper] are not entirely consistent with the evidence, as they have been found to be disproportionate to the clinical findings. [Raper's] subjective complaints have been accepted, as far as they were supported by the objective evidence and by the record as a whole. His impairments are limiting; however, not disabling. The record simply does not support [Raper's] allegations of disability.

The ALJ found Raper's complaints credible only to the extent that they adhered to his RFC determination that Raper could perform sedentary work. And the ALJ's reason for partially discrediting Raper's subjective complaints was the same as his reasons for discounting the November 4, 2015, medical opinion: his complaints were inconsistent with the medical record. Therefore, the ALJ considered Raper's subjective complaints with the record as a whole and adequately explained his decision not to fully credit Raper's alleged limitations on his ability to work.[17]  *See Dyer*, 395 F.3d at 1212.

---

[17] Raper also argues that we should apply the reasoning of our unpublished opinion, *Martinez v. Commissioner of Social Security*, No. 21-12116, 2022 WL 1531582 (11th Cir. May 16, 2022) (per curiam). There, we held that the

ALJ's general statement that [the claimant's] testimony regarding the extent of his pain and limitations was inconsistent with the record failed to provide an explicit and adequate explanation for discrediting this testimony. [And] the implication as

---

> to [the claimant's] credibility was not obvious from the ALJ's opinion that merely summarized portions of the medical evidence showing mild to moderate test results, which were not necessarily inconsistent with [the claimant's] descriptions of his pain and limitations.

*Id.* at *2.

Raper's argument is unavailing. *Martinez* is an unpublished case. "Our unpublished opinions are not precedential, so they do not bind us . . . to any degree." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1346 (11th Cir. 2022). Even if *Martinez* were precedential, Raper's case is distinguishable in two ways. First, as explained above, we disagree with Raper that the ALJ failed to provide an explicit and adequate explanation for discrediting his testimony. Second, also explained above, it was obvious which portions of Raper's testimony the ALJ found credible.

Moreover, in other unpublished decisions, we have found no error in similar factual circumstances. *See Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 740 (11th Cir. 2017) (per curiam) (holding that the ALJ's explanation—that the claimant's statements about the intensity, persistence, and limiting effects of his symptoms "were not credible to the extent they were inconsistent with the RFC"—"was more than just a 'broad rejection'"); *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 513–14 (11th Cir. 2011) (per curiam) (holding that the ALJ "considered [the claimant's] subjective complaints [about the intensity and limiting effects of her symptoms] in light of the record as a whole and adequately explained his decision not to fully credit [the claimant's] alleged limitations on her ability to work"); *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743–45 (11th Cir. 2011) (per curiam) (holding that the ALJ did not err when he found the claimant's testimony "credible only to the extent it was consistent with his RFC determination" and "[t]he ALJ's reasons for partially discrediting [the claimant's testimony] were the same as his reasons for discounting the opinions of [the claimant's] treating and examining doctors, namely that their testimony was not supported by the medical record").

## IV. Conclusion

Accordingly, we affirm the District Court's judgment affirming the SSA's denial of Raper's application for disability insurance benefits.

**AFFIRMED**.